IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEAUMA BEN ALEFOSIO,<br><br>Plaintiff,<br><br>v.<br><br>HAWAII EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; AMERICAN SAMOA GOVERNMENT,<br><br>Defendants. | CIV. NO. 24-00329 JMS-RT<br><br>ORDER GRANTING DEFENDANT AMERICAN SAMOA GOVERNMENT'S MOTION TO DISMISS, ECF NO. 13 |

**ORDER GRANTING DEFENDANT AMERICAN SAMOA
GOVERNMENT'S MOTION TO DISMISS, ECF NO. 13**

**I. INTRODUCTION**

On August 5, 2024, pro se Plaintiff Leauma Ben Alefosio ("Plaintiff"
or "Alefosio") filed a Complaint against Defendants the Hawaii Equal Employment
Opportunity Commission (the "Hawaii EEOC"), and the American Samoa
Government ("ASG").  Alefosio's claims arise out of his termination from his
position in the Office of the Public Defender for American Samoa.  He alleges
Count I—Violations of Title VII of the Civil Rights Act, against ASG, and Count
IX—Conspiracy to Commit Fraud, against both Defendants.  The other seven
Counts are alleged against the Hawaii EEOC only (all concerning allegations of

misconduct in the handling of his discrimination claim).[1]  ECF No. 1 at PageID.5–

18.  ASG filed a Motion to Dismiss Alefosio's Complaint under Federal Rules of

Civil Procedure 12(b)(2) and 12(b)(3) (the "Motion").  ECF No. 13.  For the

following reasons, Defendant's Motion is GRANTED.

## II.  BACKGROUND

### A.  Factual Background

This is Alefosio's third case in the District of Hawaii arising out of the

same alleged facts.  On April 26, 2024, he filed a Complaint in *Alefosio v. Am.*

*Samoa Gov't*, Civ. No. 24-00196 DKW-KJM.  That case alleged the same set of

operative facts as Alefosio alleges here in Count I: that he was terminated in a

discriminatory manner from his position at the Office of the Public Defender.  *See*

*id.*, ECF No. 1 at PageID.2–10.  The court dismissed that Complaint for improper

venue.  *Alefosio v. Am. Samoa Gov't*, 2024 WL 2701536, at *2 (D. Haw. May 24,

2024), *reconsideration denied*, 2024 WL 3090178 (D. Haw. June 21, 2024).

Alefosio then filed a second case arising out of the same operative

facts as the first, *Alefosio v. Am. Samoa Gov't*, Civ. No. 24-00281 DKW-WRP (D.

Haw. June 28, 2024).  The Court dismissed that case—again, for improper venue—

---

[1] These are: Count II—that the EEOC violated 42 U.S.C. § 2000e-5(b) by failing to investigate his claims; Count III—that the EEOC violated 42 U.S.C. § 2000e-5(b) by failing to conciliate his claims; Count IV—that the EEOC "misled Alefosio about his rights"; Count V— that the EEOC concealed ASG's wrongful conduct; Count VI—fraudulent misrepresentation against the EEOC; Count VII—negligence against the EEOC; and Count VIII—negligent infliction of emotional distress against the EEOC.  *See* ECF No. 1 at PageID.18–26.

without leave to amend.  *See Alefosio v. Am. Samoa Gov't*, Civ. No. 24- 00281 DKW-WRP, 2024 WL 3502992, at *3 (D. Haw. July 18, 2024).  Alefosio appealed the dismissal of his second case to the Ninth Circuit.  *See Alefosio v. Am. Samoa Gov't*, USCA No. 24-4506.  The Ninth Circuit ordered Alefosio to either voluntarily dismiss the appeal or file a statement explaining why the appeal was not frivolous.  Alefosio then voluntarily dismissed the appeal.[2]

This case arises out of the same facts as Alefosio's two previous cases, but it adds the Hawaii EEOC as a co-defendant.  In Count I, Alefosio contends that he was retaliated against in a discriminatory manner by ASG.  ECF No. 1 at PageID.5.  After his salary was reduced, Alefosio complained to "Governor Lolo."[3] *Id.* at PageID.6–7.  After learning that Alefosio had complained to Governor Lolo, his supervisor subjected him to several adverse actions in the workplace, culminating in his termination.  *Id.* at PageID.8–9, 13.

In Counts II through VIII, Alefosio alleges that the Hawaii EEOC committed various forms of misconduct in its handling of his charges against ASG.  *See* ECF No. 1 at PageID.18–32.  He alleges, among other things, that the Hawaii

---

[2] Alefosio states in his Response to the Motion that he voluntarily dismissed the appeal because "he felt that reviewing the matter on a piecemeal approach would not do it justice." ECF No. 22-1 at PageID.163.

[3] "Governor Lolo" likely refers to Governor Lolo Matalasi Moliga, who served as Governor of American Samoa from January 3, 2013 to January 2, 2021.  Nat. Gov. Assoc., *Gov. Lolo Matalasi Moliga*, https://www.nga.org/governor/lolo-matalasi-moliga/ [https://perma.cc/9EHK-FESX].

EEOC did not investigate his claims, and that the employee who conducted his interview, Emily Mauga ("Mauga"), fraudulently misled him into believing that he could not sue ASG in court, such that he did not timely submit a "charge form" (formal charge of discrimination) against ASG.[4]  *Id.* at PageID.25–26.  As of March 19, 2025, the Hawaii EEOC had not been served.  *See* ECF No. 63.

Count IX asserts that ASG conspired with the Hawaii EEOC to commit fraud.  ECF No. 1 at PageID.28.  Although Alefosio does not appear to allege that any specific acts or agreements connect the two Defendants, he argues that a conspiracy can be inferred from some or all of the following facts and circumstances.  *Id.* at PageID.31.  He alleges that "the Office of the Administrative Law Judge and the local [American Samoa] EEOC Office are both under the Office of the Governor"—i.e., they are both subunits of ASG.  *Id.* at PageID.19.  When Alefosio filed a complaint with the Office of the Administrative Law Judge in American Samoa, Administrative Law Judge ("ALJ") Marie Alaʻilima "focused the analysis of her decision on the wrong legal issue to mislead Alefosio."  *Id.* at PageID.30.  When he then filed a claim with the Hawaii EEOC, the employee that he communicated with, Mauga, knew from Alefosio that he had already filed a

---

[4]  A "charge form" likely refers to a formal Charge of Discrimination, which can be completed after submitting an inquiry to the EEOC and attending an interview.  *See* U.S. Equal Emp. Opp. Comm'n, *Filing a Charge of Discrimination*, https://www.eeoc.gov/filing-charge-discrimination [https://perma.cc/MM9P-Z95U].  Alefosio admits that he did not file a timely charge of discrimination against ASG and "forfeited his right to sue the defendant for discriminatory retaliation in court."  *See* ECF No.1 at PageID.22.

4

complaint before an ALJ in American Samoa, and "arbitrarily and capriciously" refused to investigate his claims. *Id.* at PageID.30, 32.

Furthermore, in explaining to Alefosio that his claim would be dismissed by the EEOC, Mauga "sounded suspicious," was "very dismissive," and gave Alefosio a "confusing" explanation. *Id.* at PageID.31. He requested to speak to a different employee, but Mauga refused. *Id.* at PageID.24, 39; ECF No. 22-2 at PageID.212. Alefosio argues that this shows that Mauga had a "hidden agenda," and he "suspected she was related to Governor Lemanu who is implicated in the suit."[5] ECF No. 1 at PageID.31. Because "there is constant communication between [the American Samoa EEOC and the Hawaii EEOC]," and the American Samoa EEOC is supervised by the Office of the Governor against which Alefosio's allegations are directed, "one could infer that the [American Samoa] EEOC Office . . . compromised Alefosio's chances" of filing claims with the Hawaii EEOC. *Id.*

## B.    Procedural Background

ASG filed the instant Motion on September 19, 2024. ECF No. 13. Alefosio filed a "Motion to Deny Dismissal of Civil Complaint," a memorandum in support, a declaration, and two exhibits on December 16, 2024. ECF No. 22. On December 17, 2024, Alefosio then filed a request to file fourteen exhibits in support

---

[5] According to Alefosio, he asked Mauga whether she was related to Governor Lemanu and she said "no." ECF No. 22-2 at PageID.212.

of his Response, which was granted.  ECF Nos. 26, 29.  The court considers these

collective documents Alefosio's "Response" to the Motion.  ASG filed a Reply to

the Response on January 3, 2025.  ECF No. 32.  Alefosio then filed a Request to

File a Sur-Reply, ECF No. 33, which the court denied for lack of good cause.  The

court decides the Motion without a hearing under Local Rule 7.1(c).

### III.  <u>STANDARDS OF REVIEW</u>

**A.    Rule 12(b)(2)**

A federal court's personal jurisdiction over a defendant may be

challenged by motion pursuant to Federal Rule of Civil Procedure 12(b)(2).  To

withstand a motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of establishing jurisdictional facts.  *See In re Boon Global Ltd.*, 923 F.3d

643, 650 (9th Cir. 2019).  "When a defendant's motion to dismiss on jurisdictional

grounds rests only on written materials rather than on testimony at an evidentiary

hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023)

(quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

2004) (citation and internal quotation marks omitted)).  "[U]ncontroverted

allegations in [the] complaint must be taken as true, and conflicts between the facts

contained in the parties' affidavits must be resolved in [the plaintiff's] favor."  *Rio*

*Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "The court

may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

## B.    Pro Se Plaintiff

Plaintiff is appearing pro se; consequently, the court liberally construes the Complaint and resolves all doubts in Plaintiff's favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## IV.  **DISCUSSION**

Alefosio's claims against ASG are confined to Counts I and IX of the Complaint.  Although the Motion addresses both personal jurisdiction and venue, the court determines that Alefosio has not asserted jurisdictional facts sufficient to defeat ASG's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).  Because it is dispositive, the court addresses only personal jurisdiction as the basis for dismissal.[6]

---

[6] In any event, venue appears to be improper.  Alefosio must establish that venue is proper as to ASG and the Hawaii EEOC individually for each claim.  *Duarte v. Cal. Hotel & Casino*, 2009 WL 4668739, at *3 (D. Haw. Dec. 4, 2009) (noting that "Plaintiffs must establish that venue is proper as to *each* Defendant and *each* claim").  The venue statute, 28 U.S.C. § 1391(b) states that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

And the venue statute for Title VII specifies that an action

> may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

(continued . . . )

A.    **Legal Principles**

"For a court to exercise personal jurisdiction over a defendant, there must be an applicable rule or statute that potentially confers jurisdiction over the defendant." *Bolos v. Waldorf Astoria Mgmt. LLC*, 2024 WL 3594741, at *2 (D. Haw. July 31, 2024) (citing *Action Embroidery Corp. v. Atl. Embroidery Inc.*, 368 F.3d 1174, 1177 (citation, brackets, and internal quotation marks omitted)).

And under Federal Rule of Civil Procedure 4(k)(1)(A), "personal jurisdiction over an out-of-state defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Balongo v. Balongo*, 2024 WL 3293620, at *2 (D. Haw. July 3, 2024) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (brackets omitted)).  As for such a determination via the long-arm statute:

> In the usual case, the long-arm prong of the inquiry is governed by Federal Rule of Civil Procedure 4(k)(1)(A), which provides that a federal district court may exercise personal jurisdiction if the defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"; that is, if the defendant is subject to personal jurisdiction under that forum state's long-arm statute.

---

42 U.S.C. § 2000e-5(f)(3).

Alefosio was unable to establish proper venue for ASG under either statute in his two previous cases in this district.  Civ. No. 24-00196 DKW-KJM, ECF No. 8 at PageID.173; Civ. No. 24-00281 DKW-WRP, ECF No. 10 at PageID.74–75.  Venue appears to be similarly improper as to ASG in this matter, given that—as explained to follow—there is no personal jurisdiction over ASG, the conduct giving rise to Counts I and IX against ASG all occurred in American Samoa, and ASG's principal office is in American Samoa.

*Hueter v. Kruse*, 576 F. Supp. 3d 743, 765 (D. Haw. 2021). And "Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, is coextensive with federal due process." *Id.* (citations omitted); *see also Yamashita v. LG Chem, Ltd*., 62 F.4th 496, 502 (9th Cir. 2023). The Due Process clause "necessitates that a nonresident defendant have 'certain minimum contacts' with a forum state before that state can exercise personal jurisdiction over that individual." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 210, 316 (1945)).

"A defendant's minimum contacts can give rise to either general or specific jurisdiction." *Balongo*, 2024 WL 3293620, at *3 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)). A court may exercise general jurisdiction over a defendant whose connections to the forum are "so continuous and systematic" that the defendant is "essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014). For example, a court may exercise general jurisdiction over a defendant who resides in the forum state. *See id.* at 137.

A court may exercise specific jurisdiction in more limited circumstances—when a case "arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (alterations omitted)). Whether specific jurisdiction is proper "depends on an

10

affiliation between the forum and the underlying controversy, principally, activity

or an occurrence that takes place in the forum State and is therefore subject to the

State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011) (alteration, citation, and quotation marks omitted).

The Ninth Circuit applies a three-part inquiry to determine whether a

non-resident defendant has sufficient "minimum contacts" to warrant the exercise

of personal jurisdiction: (1) "the defendant must either purposefully direct his

activities toward the forum or purposefully avail himself of the privileges of

conducting activities in the forum"; (2) "the claim must be one which arises out of

or relates to the defendant's forum-related activities"; and (3) "the exercise of

jurisdiction must comport with fair play and substantial justice, i.e. it must be

reasonable." *AMA Multimedia, LLC, v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020)

(alteration, citation, and quotation marks omitted).  "All three prongs must be

satisfied to assert personal jurisdiction . . . ." *LNS Enters.*, 22 F.4th at 859.  If a

plaintiff satisfies his burden to prove the first two prongs, "the burden then shifts to

the defendant to present a compelling case that the exercise of jurisdiction would

not be reasonable." *Axiom Foods Inc. v. Acerchem Intl., Inc.,* 874 F.3d 1064, 1068–

69 (9th Cir. 2017) (citation and internal quotation marks omitted).

When a claim sounds in tort, the court employs the purposeful

direction test, often referred to as the "effects" test.  *See id*. at 1069; *Calder v.*

*Jones*, 465 U.S. 783, 788–89 (1984).  Both fraud-related claims and discrimination claims sound in tort.  *See Jillella v. Int'l Sols. Grp., Inc*., 507 F. App'x 706, 708 (9th Cir. 2013) ("In addition, in applying the 'purposeful direction' test to cases claiming tortious conduct, such as this one, where Jillella alleges fraud, we use the '*Calder*-effects' test."); *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods*., 663 F. Supp. 2d 841, 850 (D. Ariz. 2009) (same); *Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*, 2020 WL 6290377, at *8 (N.D. Cal. Oct. 27, 2020), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co., Ltd*, 857 F. App'x 318 (9th Cir. Aug. 26, 2021) (holding that claims of discrimination are akin to tort claims); *see also Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995) (citing with approval a discrimination case under the Age Discrimination in Employment Act in which the district court applied the "purposeful direction" test) (citing *Magid v. Marcal Paper Mills,* 517 F. Supp. 1125, 1130 (D. Del. 1981)); *Franey v. Am. Battery Sols., Inc*., 2022 WL 4280638, at *7 (N.D. Cal. Sept. 15, 2022) ("Courts apply the purposeful direction test to torts, including workplace harassment, gender-discrimination, and retaliation claims . . . .").

Under this test, a defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Axiom Foods*, 874 F.3d at 1069

(citation omitted); *see also Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024).

## B.    Analysis

As explained to follow, the court lacks personal jurisdiction under the Hawaii long-arm statute.[7]

### 1.    *General Jurisdiction*

General jurisdiction is lacking:  ASG does not have connections with Hawaii that are "so continuous and systematic" that the defendant is "essentially at home" here.  *Daimler AG*, 571 U.S. at 133 n.11.  To support general jurisdiction, Alefosio alleges only that the American Samoa Government has an office located in

---

[7]  Neither party raised the issue of whether the court could exercise personal jurisdiction over ASG as to the Title VII claim under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2).  Regardless, for the reasons discussed in *Hueter*, 576 F. Supp. 3d at 766–771, Rule 4(k)(2) does not apply.  *Hueter*—also a case arising out of events in American Samoa—determined that Rule 4(k)(2) was inapplicable because the American Samoa High Court, although a territorial court, qualified as a "state's court of general jurisdiction," and the federal claim at issue (a 28 U.S.C. § 1983 claim) could be heard in that court.  *See* Rule 4(k)(2) (requiring, as a necessary element for the rule to apply, that "the defendant is not subject to the jurisdiction in any state's courts of general jurisdiction").

Here, state courts, including the American Samoa High Court, have jurisdiction to hear claims under Title VII.  *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) (stating that state courts can hear Title VII claims); *Hueter v. AST Telecomm LLC*, 2023 WL 4054558, at *11–12 (D. Haw. June 16, 2023) (applying *Yellow Freight* and concluding that the American Samoa territorial courts may hear claims under the Endangered Species Act); *see also Meaamaile v. Am. Samoa*, 550 F. Supp. 1227, 1235–36 (D. Haw. 1982) ("[T]erritorial courts are competent to decide cases arising under the Constitution and laws of the United States. . . . The High Court of American Samoa is, therefore, competent to decide plaintiff's federal civil rights claim.") (internal citations omitted).  Thus, because ASG resides in American Samoa, and because the American Samoa High Court may adjudicate a Title VII claim, the federal long-arm statute does not apply to establish personal jurisdiction over ASG.

Honolulu.  ECF No. 1 at PageID.3.  This office is allegedly headed by the Governor of American Samoa, Lemanu Mauga—who is presumably a resident in American Samoa.  *Id.*  This is insufficient to establish the necessary contacts.  *See, e.g.*, *Daimler AG*, 571 U.S. at 123 (finding "multiple California-based facilities," including a regional office, insufficient to establish general jurisdiction); *Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, 2021 WL 3053201, at *5 (N.D. Cal. July 20, 2021) (stating that "[t]he United States Supreme Court and courts in [this] Circuit have held that even currently having an office or facility in the forum state . . . does not suffice to establish general jurisdiction" and collecting cases).  This also applies to Alefosio's allegation that the "local [American Samoa] EEOC office under the Governor's Office" is supervised by, and is in constant contact with, the Hawaii EEOC.  ECF No. 1 at PageID.31.  These contacts are not so "continuous and systematic" to make ASG—which comprises more than a "local [American Samoa] EEOC office"—"essentially at home" in Hawaii.

### 2.    *Specific Jurisdiction*

Likewise, there is no specific jurisdiction over ASG.  Specific jurisdiction requires three prongs: (1) "the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of

14

jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Wanat*, 970 F.3d at 1208 (alteration, citation, and quotation marks omitted).

With respect to Count I (Title VII), the claim does not arise out of Hawaii-related activities.  Alefosio is a resident of American Samoa, not Hawaii, ECF No. 1 at PageID.2, and all of Alefosio's allegations against ASG concern events that transpired in American Samoa.  *See generally* ECF No. 1 at PageID.3– 18.  There is no connection between the events that gave rise to Alefosio's claims of discrimination during his work at the ASG Office of the Public Defender in Count I, and the contacts between ASG and the State of Hawaii (namely, the ASG Office in Hawaii).  Further, as set forth below, ASG did not purposefully direct its activities toward Hawaii.

With respect to Count IX (Conspiracy to Commit Fraud), Alefosio alleges that there was continuous communication between the American Samoa EEOC and the Hawaii EEOC, and that a variety of facts—such as: (1) the ALJ who heard Alefosio's case in American Samoa reached the wrong decision in order to mislead him; (2) Hawaii EEOC employee Mauga knew that Alefosio had filed a claim before an ALJ in American Samoa; (3) Mauga and the Hawaii EEOC decided not to further investigate his case; (4) Alefosio suspected that Mauga is related to the ASG Governor Lemanu; and (5) Mauga refused to let him speak to a different

employee when she explained the EEOC's determination to him over the phone—
give rise to an inference of conspiracy between the American Samoa EEOC and
Hawaii EEOC.  *See* ECF No. 1 at PageID.30–32.  But these allegations fall short for
two reasons:  They are too conclusory to support an inference of conspiracy, and,
even if they weren't too conclusory, the facts do not support a finding of specific
jurisdiction.

First, Alefosio's conspiracy allegations are entirely conclusory and fail
to give rise to any inference of a conspiracy.[8]  *See Melea, Ltd. v. Jawer SA*, 511
F.3d 1060, 1069 (10th Cir. 2007) ("In order for personal jurisdiction based on a
conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that
a conspiracy existed, and must allege facts that would support a prima facie
showing of a conspiracy.") (citation omitted); *Pyle v. Hatley*, 239 F. Supp. 2d 970,
979 (C.D. Cal. 2002) ("[C]onclusory conspiracy allegations are insufficient to
establish that this Court can exercise personal jurisdiction over defendants . . . .")

---

[8]  Although the Ninth Circuit has not definitively stated that, to make a prima facie case of specific personal jurisdiction, allegations of contacts with the forum must meet the *Iqbal* plausibility standard, at least one decision indicates this may be so.  *See Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (determining that allegations of an agency relationship between a parent and subsidiary were too conclusory to establish specific jurisdiction and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In any event, a plaintiff must provide more than "bare allegations."  *42 Ventures, LLC v. Rend*, 2020 WL 6257069, at *2 (D. Haw. Oct. 23, 2020) (citing *AMA Multimedia, LLV v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2019)), *aff'd in part and remanded on other grounds sub nom. 42 Ventures, LLC v. Mav*, (9th Cir. Dec. 16, 2021).

(citing *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 364 (9th Cir. 1995) (rejecting

a "conspiracy theory" of jurisdiction on the basis that there were "no facts" alleged

to "even suggest a conspiracy")); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th

Cir. 2006) (holding that conclusory allegations concerning the existence of a

conspiracy are "insufficient to establish a prima facie case of personal

jurisdiction"); *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) ("The cases

are unanimous that a bare allegation of a conspiracy between the defendant and a

person within the personal jurisdiction of the court is not enough."), *superseded by*

*rule on other grounds as stated in Cent. States, Se. & Sw. Areas Pension Fund v.*

*Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000).  But even if the

allegations were not conclusory, they nonetheless fail to establish sufficient contacts

to support a finding of specific jurisdiction.

Alefosio may be attempting to rely on a largely discredited conspiracy-

based theory of personal jurisdiction, which "is based on the premise that a

conspirator's acts in furtherance of a conspiracy are attributable to the other

members of the conspiracy."  *In re W. States Wholesale Nat. Gas Litig.*, 605 F.

Supp. 2d 1118, 1138 (D. Nev. 2009).  "Consequently, some courts attribute a

conspirator's in-forum acts to his co-conspirators for personal jurisdiction

purposes."  *Id.*  Although the Ninth Circuit has not opined on this theory, the court

agrees with many district courts in this circuit that have concluded that a

conspiracy-based theory of personal jurisdiction fails to comport with due process. *See, e.g., id.* at 1139; *Zhang v. Voice of Guo Media Inc.*, 2022 WL 20846203, at \*4 (D. Ariz. July 6, 2022); *Ansah v. Regime PPE*, 2022 WL 19827373, at \*4 (C.D. Cal. Feb. 10, 2022); *Brown v. 140 NM LLC*, 2019 WL 118425, at \*5 (N.D. Cal. Jan. 7, 2019); *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1268 (W.D. Wash. 2005); *see also Aldini AG v. Silvaco, Inc.*, 2023 WL 3749792, at \*6 (N.D. Cal. Mar. 27, 2023) ("In the absence of binding authority to the contrary, the Court rejects the conspiracy theory of jurisdiction, which appears to strain the boundaries imposed by the due process clause.").[9]  In short, simply alleging a conspiracy between ASG and the Hawaii EEOC does not provide a basis, without more, for the court to find specific jurisdiction over ASG.

Rather than applying a conspiracy-based theory of personal jurisdiction, the court must focus on the forum-related acts committed by the non-resident defendant.  *See, e.g., Pandolfi v. Aviagames, Inc.*, 2024 WL 4951258, at \*8 n.9 (N.D. Cal. Dec. 3, 2024) (noting that "[w]here conspiracy is alleged, an exercise of personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant") (quoting *Wescott v. Reisner*, 2018 WL

---

[9]  The Ninth Circuit rejected a conspiracy theory of venue in *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 493 (9th Cir. 1979), stating that its origins stem from an "illegitimate birth."  Although the Ninth Circuit has not provided specific guidance on the conspiracy theory of personal jurisdiction, given its ruling in the venue context, it seems that the Ninth Circuit would likely find the conspiracy theory of personal jurisdiction to be equally illegitimate.

2463614, at *4 (N.D. Cal. June 1, 2018)); *see also Jungquist v. Sheikh Sultan Bin*

*Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (stating that a "plaintiff

must plead with particularity the conspiracy as well as the overt acts within the

forum taken in furtherance of the conspiracy") (internal citation and quotation

marks omitted); *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 87 (2d

Cir. 2018) (setting forth the test for conspiracy-based personal jurisdiction: "(1) a

conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-

conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with

a state to subject that co-conspirator to jurisdiction in that state"); *Unspam Techs.,*

*Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (same).

Thus, even in a case alleging a conspiracy, the court's focus remains—

as it constitutionally must—on the defendant's contacts with the forum state.  *See,*

*e.g.*, *In re W. States Wholesale Nat. Gas Litig*., 605 F. Supp. 2d at 1140 (stating

that, absent requiring purposeful direction at the forum, "the conspiracy theory of

personal jurisdiction 'threatens to confuse the standards applicable to personal

jurisdiction and those applicable to liability'") (quoting *Melea*, 511 F.3d at 1070);

*Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 440 (D.N.J. 2021) ("And

federal due process does not square with the conspiracy-jurisdiction theory.

Purposeful availment must be analyzed individually to assure that each defendant

deliberately targeted this State."); *Kuraki Am. Corp. v. Dynamic Intl of Wisconsin*

*Inc.*, 2014 WL 6834226, at *2 (E.D. Wis. Dec. 3, 2014) (stating that the conspiracy theory of personal jurisdiction "cannot be used to 'bypass due process analysis'") (quoting *Youming Jin v. Ministry State Sec.*, 335 F. Supp. 2d 72, 79 (D.D.C. 2004) (quoting Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234, 254 (1984))).

And so the court must still apply *Wanat* and ask whether ASG purposefully directed its activities toward Hawaii, whether Alefosio's claims arise out of or relate to ASG's Hawaii-related activities, and whether the exercise of jurisdiction is reasonable. *Wanat*, 970 F.3d at 1208. And applying the *Calder* "effects test," the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at 1069.

Alefosio's allegations fall well short. Simply alleging that a foreign defendant is in communication with an in-forum defendant, and that the two conspired, without more, is insufficient to show that ASG purposefully directed its activities toward Hawaii. There is no allegation, or any inference that can possibly be drawn from an allegation, that ASG: (1) expressly aimed its acts at Hawaii; or (2) caused harm that ASG knew was likely to be suffered in Hawaii.

Taking all of the facts alleged by Alefosio as true, his allegations of conspiracy are conclusory and speculative at best, and, regardless, the facts that he

alleges fall well short of meeting the minimum contacts requirement for personal jurisdiction over ASG.

### 3.    Alefosio's Arguments

Alefosio argues, first, that the court has ancillary jurisdiction over the "subject matter of this action and over the parties" under 28 U.S.C. § 1367. ECF No. 22-1 at PageID.165.  Ancillary jurisdiction—also referred to as pendent or supplemental jurisdiction—allows federal courts to entertain a "claim or an incidental proceeding (not a case itself) that does not satisfy requirements of an independent basis of subject matter jurisdiction."  Wright & Miller, § 3523 Terminology and Historical Development, 13 Fed. Prac. & Proc. Juris. § 3523 (3d ed.) (emphases omitted).  But—with limited exceptions not raised here[10]—ancillary jurisdiction applies to extend a federal court's *subject matter* jurisdiction over additional claims or proceedings and is not at issue in the Motion.  *See id.*  Thus, none of Alefosio's arguments regarding ancillary or supplemental jurisdiction is

---

[10]  Some courts recognize a doctrine of "pendent personal jurisdiction," which "permits a court to entertain a claim against a defendant over whom it lacks personal jurisdiction, but only if that claim arises from a common nucleus of operative fact with a claim in the same suit for which the court does have personal jurisdiction over that defendant."  Wright & Miller, § 3523 Terminology and Historical Development, 13 Fed. Prac. & Proc. Juris. § 3523 (3d ed.); *see also Action Embroidery Corp.*, 368 F.3d at 1181 (adopting pendant personal jurisdiction in the Ninth Circuit); *Bolos*, 2024 WL 3594741, at *8 (applying doctrine).  Regardless, pendant personal jurisdiction does not apply here—it requires a court to have personal jurisdiction over the defendant for some claims, and then permits the court to exercise jurisdiction over certain other claims.  Here, there is no personal jurisdiction over any claim against ASG.

relevant—that is, Alefosio does not refute ASG's argument the court does not have *personal* jurisdiction over ASG (nor ASG's other argument that venue is improper).[11]  *See Ins. Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The concepts of subject-matter and personal jurisdiction . . . serve different purposes, and these different purposes affect the legal character of the two requirements."); *Clancy v. Allstate Ins. Co.*, 2021 WL 3861421, at *4 (N.D. Cal. Aug. 30, 2021) ("Plaintiff conflates personal jurisdiction with subject matter jurisdiction, both of which must be satisfied for the Court to adjudicate this lawsuit.").

## C.    Leave to Amend

Alefosio had an opportunity to submit facts in support of personal jurisdiction and venue in response to ASG's Motion, but he was unable to do so. And—although Alefosio failed to demonstrate good cause for filing the Sur-

---

[11]  Alefosio's ancillary jurisdiction argument centers around a Consent Decree entered into in the matter of *United States of America v. American Samoa Government, Department of Human and Social Servs.*, Civ. No. 23-00209 HG-KJM (D. Haw. May 11, 2023).  *See* ECF No. 22-1 at PageID.165–166.  The parties to that agreement, ASG and the United States, consented to venue "for the purposes of this Decree and proceedings related to this Decree."  Civ. No. 23-00209, ECF No. 10 at PageID.37.  Alefosio claims in his Response that he may be joined as a party in that action because he asserts a right to relief arising out of the same transaction or occurrence at issue in that action.  But that action was filed by the United States on behalf of a different employee of ASG, Simeonica Tuiteleleapaga, who worked in the Department of Health and Human Services, not the Office of the Public Defender.  *Id.,* ECF No. 1 at PageID.3.  In short, Alefosio has cited no authority—and the court is aware of none—that would support exercising personal jurisdiction over ASG in this action on the basis of a consent decree that ASG entered with a different party (the United States) in a different suit some years after the events giving rise to Alefosio's suit.

Reply—the court has also reviewed and considered the proposed Sur-Reply for the limited purpose of determining whether amendment would be futile. The proposed Sur-Reply focuses on jurisdictional issues, but none of the facts or arguments within it—which generally repeat facts and arguments in Alefosio's Complaint and Response—provides any basis to exercise personal jurisdiction over ASG. Given that Alefosio has been given ample opportunity to submit facts to support personal jurisdiction, and he has been unable to show how he could establish personal jurisdiction, any effort to amend would be futile. Thus, the Motion is GRANTED without leave to amend, and ASG is DISMISSED from the case.

## V.  **CONCLUSION**

For the reasons set forth above, the court GRANTS ASG's Motion, ECF No. 13, and DISMISSES Alefosio's Complaint against ASG without prejudice to filing the case in American Samoa.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 19, 2025.



  /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge